# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

TERRENCE W. FANNON,

     Petitioner,    :  Case No. 1:20-cv-051

  - vs -         District Judge Matthew W. McFarland
              Magistrate Judge Michael R. Merz

WARDEN, London
 Correctional Institution,

            :

     Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Terrence Fannon under 28 U.S.C. § 2254, is before the Court for decision on the merits. The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the Southern District.

The relevant pleadings are the Petition (ECF No. 3), the State Court Record (ECF Nos. 5, 7) and the Amended Return of Writ (ECF No. 8). When ordering the Respondent to answer, Magistrate Judge Bowman set a deadline for Petitioner to file a reply or traverse of twenty-one days after the Return was filed (Order, ECF No. 2, PageID 28). Because the Amended Return was filed May 14, 2020, Petitioner's deadline for a reply was June 8, 2020.[1] However, Petitioner has neither filed a reply nor sought an extension of time to do so.

---

[1] Petitioner was entitled to an additional three days under Fed.R.Civ.P. 6 because the Return was served on him by mail.

**Litigation History**

On December 12, 2014, the Hamilton County grand jury indicted Fannon on four counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b) (counts 1-4), and two counts of gross sexual imposition (GSI) in violation of Ohio Rev. Code § 2907.05(A)(4) (counts 5-6). (Indictment, State Court Record, ECF No. 5, Ex. 1).

On October 10, 2017, pursuant to a plea agreement, Fannon pleaded guilty to one count of first degree felony rape in violation of Ohio Rev. Code § 2907.02(A)(2) (count 1, as amended) and one count of third degree felony gross sexual imposition (count 5) with the remaining counts dismissed. After reviewing a presentence investigation report, the trial judge sentenced Fannon to an aggregate prison term of thirteen years.

On May 9, 2018, Fannon sought leave to file a delayed direct appeal (Motion, State Court Record, ECF No. 5, Ex. 9). The motion was granted, and counsel appointed. However, the Ohio First District Court of Appeals affirmed the conviction and sentence. *State v. Fannon,* 2019-Ohio-1752 (Ohio App. 1st Dist., May 8, 2019), appellate review declined, 156 Ohio St. 3d 1478 (2019).

On October 23, 2019, the trial court amended its sentencing entry *nunc pro tunc* to state that "defendant was found to be a Tier III sex offender" and "defendant is classified a Tier III sex offender/child victim offender." (Amended Sentencing Entry, State Court Record, ECF No. 5, Ex. 20).

On January 6, 2020, Fannon deposited his habeas corpus Petition in the prison mail system, thereby effectively filing it with this Court. He pleads two grounds for relief:

> **Ground One:** Petitioner was denied Constitution's Fifth Amendment right to adequate notice of his classification and registration requirements.
>
> **Supporting Facts:** The trial court judge when accepting the plea of guilty failed to inform petitioner of the consequences of a Tier III classification and the plea must be vacated.

> **Ground Two:** The petitioner was denied Fifth Amendment
> Constitution right to notification of nature of sentence.
>
> **Supporting Facts:** During the plea colloquy, the trial court failed to
> comply with the notice requirements under Crim.R. 11 and inform
> Mr. Fannon of the mandatory nature of his sentence.

(Petition, ECF No. 3, PageID 34-36).

# Analysis

## Ground One:  Plea Invalid for Failure to Notify of Sex Offender Classification and Registration Requirements

### Lack of Exhaustion

In the Return of Writ, Respondent asserts Petitioner has not exhausted his available state court remedies for his First Ground for Relief because he did not appeal from the *Nunc Pro Tunc* Amended Judgment Entry that imposed the Tier III sex offender classification (Amended Return, ECF No.  8, PageID 260).  Although the time to appeal of right has expired, the Warden asserts Fannon still has available the possible remedy of a delayed direct appeal.  Although the Warden thinks it unlikely the First District would grant a delayed appeal, he asserts this Court should allow the state courts to decide that question of state law, rather than decide that the supposed remedy was futile.  *Id.* at PageID 189-90.

By the time of this Report, more than thirteen months have expired since the *Nunc Pro Tunc* Entry was filed.  Petitioner has provided no evidence of doing anything in the state courts in response to the Warden's position on delayed direct appeal despite being twice reminded of the possible remedy.  Indeed, Petitioner has not responded at all to the Warden's defense of lack of

exhaustion.

The exhaustion doctrine is not jurisdictional and is thus waivable by the State, *Ex parte Royall*, 117 U.S. 241 (1886); *Granberry v. Greer*, 481 U.S. 129 (1987). 28 U.S.C. § 2254(b)(3) as added by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214), provides, however, "A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." The warden may waive exhaustion by counsel's conduct which "manifested a clear and unambiguous intent to waive the requirement." *D'Ambrosio v. Bagley,* 527 F.3d 489, 496 (6th Cir. 2008). By insisting on the possibility of delayed direct appeal, the Respondent has certainly not expressly waived the exhaustion requirement.

In support of his position that this Court should allow the First District Court of Appeals to decide the delayed appeal issue rather than finding the remedy futile, the Warden cites *Cunningham v. Hudson,* 756 F.3rd 477, 484-485 (6th Cir. 2014); *Wagner v. Smith,* 581 F.3d 410, 419 (6th Cir. 2009); *Godbolt v. Russell,* 82 Fed. Appx. 447, 450 (6th Cir. 2003); *Mack v. Bradshaw,* No. 1:04 CV 829, 2011 WL 5878395, at *25-26 (N.D. Ohio Nov. 23, 2011); and *Johnson v. Warden, Leb. Corr. Inst.*, No. 1:09-cv-336, 2010 U.S. Dist. LEXIS 72968, at *31 (S.D. Ohio June 23, 2010) (citing *Sampson v. Love,* 782 F.2d 53, 58 (6th Cir. 1986), adopted, 2010 U.S. Dist. LEXIS 72976 (S.D. Ohio July 20, 2010).

None of the three cited circuit court decisions adopts a rule that a district court must allow a habeas petitioner to attempt a particular state court remedy that could possibly be accepted by the state courts. In each case the Sixth Circuit considered state court precedent on the particular remedy in weighing whether to insist on exhaustion.

The district court in *Cunningham* had denied habeas relief, but the Sixth Circuit concluded

Cunningham had not exhausted his juror bias claim "because Cunningham may file a motion for a new trial or a second post-conviction petition." 756 F.3d at 482. The *Cunningham* Court did not adopt a categorical rule that the state courts must be given an opportunity to decide if a remedy is available. Rather it analyzed the guidance provided in Ohio law on that question and found it to be equivocal. Under those circumstances, it held the Ohio courts should decide the availability of the suggested remedies. *Id.* at 484, citing *Wagner*, 581 F.3d at 419, and *Godbolt*, 82 F. App'x at 450.

*Wagner* also did not adopt a categorical rule, but concluded the Wagner's unexhausted claim could be presented to the Michigan courts by a post-conviction post-direct appeal motion for relief from the judgment of conviction. 581 F.3d at 419. If the claim was one that could have been presented on direct appeal but was not, a movant was required to show good cause for failing to do so and resulting actual prejudice, "[b]ut there is no reason to believe that Petitioner would be unable to make such a showing, and, in any event, such a determination is for the state court to make." *Id.*

The *Godbolt* decision states something closer to a categorical rule. The district court dismissed Godbolt's petition without prejudice because it included an unexhausted claim of ineffective assistance of trial counsel. Godbolt claimed it would be too late for him to file a petition for post-conviction relief under Ohio Revised Code § 2053.21, but the Sixth Circuit affirmed the dismissal holding

> No matter how unlikely it seems that Godbolt's petition will fall within the narrow exception contained in the statute, it is for the state courts to interpret and enforce their laws on such issues. See *Israfil v. Russell,* 276 F.3d 768, 771-72, 18 Fed. Appx. 278 (6th Cir. 2001) (holding that it was proper for the district court to defer to the state court's findings as to whether a petitioner's post-conviction motion had been submitted according to Ohio's timeliness requirements).

82 Fed. Appx at 450.  It was handed down before the Supreme Court recognized our authority to stay habeas cases pending exhaustion in *Rhines v. Weber*, 544 U.S. 269 (2005). The effect of the decision was to permanently deny Godbolt federal merits review of his ineffective assistance of trial counsel claim because the habeas statute of limitations ran while his case was pending. *Godbolt* is unpublished and therefore not binding precedent.

Nothing in these three circuit court decisions removes district court authority to decide whether sending Fannon back to the First District Court of Appeals to file a motion for delayed direct appeal would be futile.

Delayed direct appeal is governed by Ohio R. App. P. 5(A) which requires the appellant to "set forth the reasons for the failure of the appellant to perfect an appeal as of right."  What reasons are sufficient?  The rule itself gives no guidance.   Granting or denying a motion for delayed appeal is committed to the "sound discretion" of the court of appeals.  *Deitz v. Money*, 391 F.3d 804 (6th Cir. 2004); *State v. Fisher*, 35 Ohio St. 3d 22 (1988); *City of Toledo v. Reasonover*, 115 Ohio App. 434 (6th Dist. 1962).   However, the case law gives little guidance on what would constitute an abuse of discretion.

In this case the Magistrate Judge concludes the possible remedy of delayed direct appeal would be futile.  One of the factors the First District Court of Appeals would look at would be Fannon's total lack of diligence in pursuing this claim.  He had raised the issue in a prior appeal[2] and obtained appellate recognition that the judgment entry was in error, but when the error was corrected, he failed to persist in state court in his claim that the earlier error had made his plea involuntary.  Moreover, he has twice been reminded by Respondent's Return and Amended Return of the possible availability of delayed direct appeal to raise the claim anew, yet he has not acted

---

[2] That prior appeal occurred on his motion for delayed appeal, so Fannon knew of that possible remedy and had successfully invoked it before.

despite the expiration of over a year since the *Nunc Pro Tunc* Judgment was entered. Under those circumstances, it is so unlikely the First District would grant a delayed appeal that the Magistrate Judge concludes it would be futile.

**Merits**

In his First Ground for Relief, Petitioner asserts his guilty plea must be vacated because he was not advised of the consequences of being classified as a Tier III sex offender, particularly the registration requirements.

A plea of guilty or no contest is valid if, but only if, it is entered voluntarily and intelligently, as determined by the totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984). A defendant must be fully aware of the direct consequences of his plea. *Brady v. United States*, 397 U.S. 742, 755 (1970).

However, the trial court has no constitutional duty to advise a defendant of the collateral consequences of a conviction. *King v. Dutton*, 17 F.3d 151, 153-54 (6th Cir. 1994); *Brown v. Perini,* 718 F.2d 784 (6th Cir. 1983). A collateral consequence is one that is "beyond the control and responsibility of the trial court." *United States v. Rodriquez-Gonzales,* 543 Fed. Appx. 531, 533 (6th Cir. 2013). Examples would include that a convicted felon loses his Second Amendment right to possess a firearm and can be severely punished for doing so. See 18 U.S.C. § 922(g)(1). Sex offender registration is merely a collateral consequence of a guilty plea because whether a

defendant "must actually register is controlled by state and federal law." *United States v. Cottle*, 355 F. Appx. 18, 20 (6th Cir. 2009); *Blumenthal v. Curley*, 2013 U.S. App. LEXIS 26018 (6th Cir. 2013).

Fannon's guilty plea was not rendered invalid by failure to notify him of the collateral consequences of being convicted of a sexual offense against a child.  His First Ground for Relief is therefore without merit.

**Ground Two:  Plea Invalid for Failure to Notify of Mandatory Nature of Sentence**

In his Second Ground for Relief, Petitioner claims his guilty plea is invalid because the trial judge did not notify him of the mandatory nature of his sentence.  Fannon raised this claim as his second assignment of error on direct appeal and the First District decided it as follows:

> [*P6]  Mr. Fannon next argues that he was not properly advised of the mandatory nature of his sentence. A trial court must substantially comply with nonconstitutional notification requirements under Crim.R. 11. "Literal compliance with Crim. R. 11 is certainly the preferred practice, but the fact that the trial judge did not  do so does not require vacation of the defendant's guilty plea if the reviewing court determines that there was substantial compliance." (Citation omitted.) *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." (Citations omitted.) Id. Generally, vacating a plea on this basis requires a showing of prejudice—that "the plea would not have otherwise been made." *State v. Maggard*, 1st Dist. Hamilton No. C-100788, 2011-Ohio-4233, ¶ 6, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). Under Crim.R. 11(C)(2)(a), "[i]n felony cases the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally and * * * [d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the changes and of the maximum penalty involved."

8

[*P7]  Mr. Fannon urges adherence to *Maggard*, in which we reversed nocontest rape pleas where the pleas were not knowingly entered. In *Maggard*, however, the trial court affirmatively misrepresented to the defendant that his sentence would not include mandatory prison time, a misrepresentation that defendant's trial counsel reaffirmed. *Id*. at ¶ 17. Under those circumstances, we vacated the subject pleas.

[*P8]  The state, for its part, points to *State v. Lunsford*, 1st Dist. Hamilton No. C-850057, 1985 Ohio App. LEXIS 9697, 1985 WL 4499 (Dec. 18, 1985), in which this court found that a colloquy including a discussion of the maximum sentence and specific reference to the entry withdrawing plea substantially complied with Crim.R. 11(C)—even though the trial court did not advise the defendant that he was ineligible for probation. Whether we consider an omission or misinformation, we must ensure that the defendant understands the implications of the plea and the rights he is relinquishing.

[*P9]  The only part of the colloquy that raises concern in this case is the trial court's mention of community control, which is not applicable to a rape sentence. Under the totality of the circumstances, however, inclusion of this admittedly inaccurate point does not rise to the level of a misrepresentation that would have affected Mr. Fannon's decision to plead. The trial court addressed Mr. Fannon regarding the range of prison terms and fines associated with his offenses, and it accurately informed him of the maximum sentence that he faced. The "Entry Withdrawing Plea of Not Guilty" indicates that a mandatory prison term is associated with each offense, the trial court specifically directed Mr. Fannon's attention to this document, and there is no allegation that this document contained any misinformation. Therefore, Mr. Fannon cannot credibly maintain that the court's stray comment about community control led him to believe he was not going to be incarcerated (nor does the record reflect any confusion on his part).

[*P10]  In sum, it does not appear from a comprehensive reading of the record that Mr. Fannon was unaware of or confused about the applicability of mandatory prison time as a result of his pleas. This case is more in line with *Lunsford*, and it is distinguishable from *Maggard* and cases in similar vein where there was either a complete omission in the colloquy of the maximum penalty or misrepresentation of the mandatory nature of the defendant's sentence. We therefore overrule Mr. Fannon's second assignment of error.

9

*State v. Fannon,* 2019-Ohio-1752.

To the extent that Petitioner's Second Ground for Relief complains of a failure of the trial court to comply with Ohio R. Crim. P. 11, his claim is not cognizable in habeas corpus. Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).

To the extent that Ground Two raises a constitutional claim – that the plea was not knowing, intelligent, and voluntary because Fannon did not understand the direct consequences – the First District's decision erects a barrier to relief.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

A state court determination that a guilty plea was knowing, intelligent, and voluntary, especially when corroborated by a transcript of the plea, is a state court finding entitled to a

presumption of correctness. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Here the First District relied on the correct law and a plea transcript to make that finding and Fannon has presented nothing to rebut it.

Because the First District's decision on the claim made in Ground Two is a not unreasonable application of relevant Supreme Court precedent and a reasonable determination of the facts based on the evidence in the state court record, it is entitled to deference by this Court under 28 U.S.C. § 2254(d)(1) and (2). Ground Two should therefore be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

November 30, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

,

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be

accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.